Fred HARB and Mildred
Harb, Plaintiffs,

v.

George "Jerry" GALLAGHER, Individu-
ally and as Center Manager of United
Parcel Service, Defendant.

No. 87 Civ. 2907 (RO).

United States District Court,
S.D. New York.

May 16, 1990.
As Amended May 23, 1990.

Lawlor & Caufield, New York City, for plaintiffs; Robert N. Ranni, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant; Allen I. Fagin, of counsel.

## ORDER

OWEN, District Judge:

The Report and Recommendation of Magistrate Tyler, dated March 12, 1990, is hereby adopted and made the order of this Court. Judgment shall be entered in favor of defendant George "Jerry" Gallagher, as against plaintiffs, Fred Harb, Mildred Harb and Robert R. Ranni, Esq., jointly and sev-

erally, for attorneys' fees and costs, in the sum of $19,943.40. Any purported indemnification agreement between the plaintiffs is declared illegal and unenforceable, as violative of the spirit, intent and purposes of Rule 11, Fed.R.Civ.P.

So ordered.

## REPORT AND RECOMMENDATION

JOEL J. TYLER, United States Magistrate.

Judge Owen, to whom this case is assigned, by "Endorsed Memorandum," dated September 4, 1987 and filed September 10, 1987, referred the same to "Magistrate Tyler to hear and report" on the amount of costs and attorneys' fees incurred by and to be awarded defendant, George "Jerry" Gallagher ("Gallagher"), pursuant to Rule 11, Fed.R.Civ.P. We also deem our responsibility to include the determination, in precise terms, as to who shall be liable for such costs and fees. The District Court Executive assigned the same to me on September 24, 1987. Pursuant to this referral, an Inquest was held on April 25, 1988, whereat Bernard M. Plum, Esq. ("Plum"), a partner in the firm of Proskauer, Rose, Goetz & Mendelsohn ("Proskauer Rose"), Allen I. Fagin, Esq. ("Fagin"), also a member of the Proskauer Rose firm, and Paul Salvatore ("Salvatore"), an associate at Proskauer Rose, testified, and at which twelve (12) exhibits were introduced in evidence on behalf of Gallagher and one (1) by plaintiffs' counsel.

Based on the evidence and reasonable inferences drawn therefrom, I respectfully submit the following findings of fact, conclusions of law and recommendations.

## BACKGROUND

On March 30, 1983 plaintiff, Fred Harb ("Harb"), accused of theft, was discharged by United Parcel Service, Inc. ("UPS") from his job of 14 years. *See* UPS discharge letter, dated March 30, 1983, attached to Gallagher's Exhibit ("Exh.") 2. The following day, March 31, 1983, Gallagher, who, at the time, held a managerial

position at UPS, filed two criminal complaints against Harb with the Town of Clarkstown Police Department, charging him with Grand Larceny in the Third Degree (Penal Law § 155.30) and Petit Larceny (Penal Law § 155.25). *See* Verified Complaint at ¶ 5, and Exhs. B and C attached to the Complaint. Thereafter, on the basis of these charges, defendant Murray Jacobson, ("Jacobson"), the Town Justice of Clarkstown, issued a criminal summons which was served on Harb. *See* Complaint, at ¶ 15, and Ex. F, attached to Complaint. Harb appeared, was arraigned and pled "not guilty" to the charges. *See* Complaint, at ¶ 16. After extended legal proceedings, a non-jury trial was held, and Harb was acquitted of all charges on the merits. *See* Complaint, at ¶ 23.

After Harb's acquittal, he, joined by his wife, brought suit in our federal District Court on October 23, 1984 against, *inter alia*, UPS, Gallagher, various UPS officials and his representative union, alleging wrongful discharge, breach of the duty of fair representation, malicious prosecution, abuse of process, and loss of consortium. *See* Harb I Complaint, attached to Plum's affidavit, sworn to May 6, 1987, ("Plum Affidavit I"), in turn, attached to Exh. 2, and *Harb v. United Postal Service, Inc.*, 123 L.R.R.M. (BNA) 2968, 2970, 1985 WL 4850 (S.D.N.Y.1985), attached to Exh. 3. Summary Judgment was granted against the plaintiffs by The Honorable William C. Conner, U.S.D.J., who found the action was frivolous and, therefore, awarded costs and attorneys' fees to the defendants. *Harb v. United Postal Service, Inc., supra*, at 2970, 2974, 1985 WL 4850 (Docket No. 84 Civ. 8430 (WCC)).

Undaunted, the Harbs, represented by Robert R. Ranni, Esq. ("Ranni"), the same attorney who advanced their cause in the ill-fated federal action, in November of 1986, filed suit in the New York State Supreme Court, Rockland County. Plaintiffs' claims again arose out of the discharge of Fred Harb by UPS, and the subsequent criminal prosecution. *See* Complaint, at ¶¶ 3, 5–7, 25, 27–30, 34–36.

On April 29, 1987, Gallagher filed a petition for removal of the action, from the state Supreme Court to this federal court, pursuant to 28 U.S.C. § 1441. *See* Petition for Removal, at ¶ 2. Gallagher then moved for "an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the complaint against defendant Gallagher on the grounds that the claims are barred by the doctrine of res judicata, and for an order pursuant to Rule 11 of the Federal Rules of Civil Procedure ordering plaintiffs and their attorney to pay Gallagher's attorneys' fees and costs for making this motion." *See* Notice of Motion, filed May 7, 1987. Defendant Jacobson sought to have the action remanded to the state court, pursuant to 28 U.S.C. §§ 1441 and 1446, or, alternatively, to have the action against him severed and remanded to the state court, pursuant to 28 U.S.C. § 1441(c). *See* Notice of Cross–Motion, filed May 19, 1987. Plaintiffs sought to remand the action to state court, pursuant to 28 U.S.C. §§ 1441 and 1446. Plaintiffs did not present any opposition to the motion to dismiss. *See* Endorsed Memorandum, filed June 5, 1987.

Judge Owen, after oral argument, (*see* transcript dated May 29, 1987), found that the removal of the action as to defendant Gallagher was "proper" and retained jurisdiction over this claim. However, he "severed and remanded" the action against Jacobson, since he concluded that "no federal question exists." *Id.* He did not address the motion made by Gallagher to dismiss on the basis of *res judicata*, allowing the Harbs an opportunity to answer. *Id.*

After the Harbs submitted papers in opposition to Gallagher's motion to dismiss, Judge Owen, in a one page, above-mentioned, "Endorsed Memorandum," filed September 10, 1987, concluded, in granting summary judgment to Gallagher, that "the essential facts and issues on which this action is predicated are identical to those asserted against defendant Gallagher in the *Harb* case dismissed by Judge Conner," and that "the principal of *res judicata* bars relitigation of any claims that were or could have been litigated in the earlier suit."

Judge Owen then addressed the defendant's Rule 11 motion for costs and attorneys' fees incurred in the making of the motion to dismiss. *Id.* He concluded, based on an affidavit submitted by Gallagher's counsel and unrefuted by plaintiffs' attorney, that Ranni was "aware that plaintiffs had a res judicata 'problem,' but that he, nonetheless, intended to proceed with this suit because Mr. Harb's mother had agreed to indemnify for any sanctions awarded against him by the Court under Rule 11." *See Id.* and Plum Affidavit, at ¶ 6. Based on this "patent violation of the requirements of Fed.R.Civ.P. 11" Judge Owen granted Gallagher's motion for costs and attorneys' fees, and, as aforesaid, referred the matter to me to "hear and report" as to such costs and fees. *Id.*

Our attention to the matter, necessarily, was held in abeyance pending the Second Circuit's consideration of an appeal taken by plaintiffs from Judge Owen's September 4, 1987 decision. Their appeal, however, was dismissed because of the plaintiffs' failure to comply with the Circuit Court's scheduling order. *See* Mandate, dated February 8, 1988.

Upon the dismissal of the appeal, a conference was scheduled before me for, and held, on March 16, 1988, at which a date was set for the hearing. At that time, I requested briefs discussing whether the costs and attorneys' fees for the Rule 11 hearing would also be compensable. I also repeatedly explained to Ranni, with increasing exasperation, that I could not address the merits of the Rule 11 sanction, only the amount of costs and attorneys' fees to be awarded, since Judge Owen explicitly limited my referral to the "determination of costs and attorney's fees." *See* Endorsed Memorandum, dated September 4, 1987, and transcript of the March 16, 1988 Conference at 4, 7–8, 10, 12–14.

The hearing was held on April 25, 1988. Despite my repeated statements to Ranni that I was only to determine the amount of the aforementioned sanctions to be imposed, and not the merits of the decision, he again sought, both orally and on papers, that I recommend the dismissal of the motion for sanctions. Tr. 3–5, 100–102.[1] Once again he was informed of my limited authority, and I refused to hear further argument on that topic.[2] Tr. 104. Aside from his claim that fees were improperly awarded, Ranni challenged: (1) the reasonableness of the rates charged by Gallagher's attorneys, (2) the amount of duplicative work done by the attorneys of Proskauer Rose in connection with the case, and (3) the failure to properly document the expenses incurred with regard to the fee proceeding. Tr. 100–101, 104–105. Although invited to do so (Tr. 105–106), Ranni submitted no post-hearing brief elucidating these objections or contradicting Gallagher's claim for costs and attorneys' fees incurred in preparing for the Rule 11 hearing.

## DISCUSSION

In assessing fee applications, the courts of our Circuit normally utilize the "lodestar" approach, as set forth in the seminal case, *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 470–73 (2d Cir.1974) (*"Grinnell I"*), *rev'd on other grounds,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979) and *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098–99 (2d Cir.1977) (*"Grinnell II"*). *See also Blum v. Stenson,* 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984) (*citing Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *Peter Fabrics, Inc. v. S.S. Hermes,* 765 F.2d 306, 318 (2d Cir.1985); *Koyen v. Consolidated*

---

1. "Tr." refers to the transcript of the hearing, with the number(s) following, representing the page(s) thereof.

2. Parenthetically, relative to Ranni's irrelevant remarks (Tr. 101), nevertheless, I direct him to *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1470 (2d Cir.1988), in which the Second Circuit reiterated its holding in *Oliveri*

*v. Thompson,* 803 F.2d 1265 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987) to the effect that Rule 11 applies to *all* papers filed in a lawsuit. Any claim to an exception to Rule 11 for actions removed from state court has no application in this circuit. *See Four Keys Leasing & Maintenance Corp. v. Simithis,* 849 F.2d 770 (2d Cir.1988).

*Edison Co. of New York, Inc.,* 560 F.Supp. 1161, 1170 (S.D.N.Y.1983) (Weinfeld, J.). "Under the lodestar approach, attorneys' fees are calculated by multiplying the number of billable hours that the prevailing party's attorneys spend on the case by 'the hourly rate normally charged for similar work by attorneys of like skill in the area.'" *New York Ass'n for Retarded Child v. Carey,* 711 F.2d 1136, 1140 (2d Cir.1983) (quoting *Grinnell II, supra,* 560 F.2d at 1098). *Also, Peter Fabrics, supra,* at 318. Once the lodestar has been computed, a court may adjust the fee award upward or downward, taking into account other factors. *Id.; see also, Eastway Const. Corp. v. City of New York,* 821 F.2d 121, 122, *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). We are reminded, however, that "attorney's fees are to be awarded 'with an "eye to moderation" seeking to avoid either the reality or the appearance of awarding "windfall fees."'" *New York Ass'n for Retarded Child., supra,* 711 F.2d, at 1139 (*quoting Beazer v. New York City Transit Authority,* 558 F.2d 97, 101 (2d Cir.1977), *in turn quoting City of Detroit v. Grinnell Corp., supra,* 495 F.2d, at 469-70.

Rule 11, as enacted by Congress, was intended to sanction those who would commence baseless or frivolous actions. As such, its primary role is not the compensation of litigants put to unnecessary expense—although this is a beneficial secondary purpose—but rather the deterrence of groundless claims. *Eastway Const. Corp. v. City of New York, supra,* 821 F.2d, at 122; *Eastway Const. Corp. v. City of New York,* 637 F.Supp. 558, 564-65 (E.D.N.Y. 1986), *modified on other grounds, supra.* In light of the goals to be achieved, the Second Circuit has explicitly recognized that when attorneys' fees are awarded pursuant to Rule 11, "that a lodestar amount need not be routinely awarded." *Eastway Const. Corp., supra,* 821 F.2d, at 122. Instead, whatever reasonable amount may be necessary to deter the conduct involved may be ordered by the district court.

## THE LODESTAR AMOUNT

Gallagher seeks $8,800 in attorneys' fees in connection with the motion for summary judgment, and $10,727 in attorneys' fees and costs incurred in connection with this fee application.[3] Tr. 6–7.

### The Summary Judgment Motion

■ Gallagher's counsel, a prestigious New York law firm, has submitted, in substantiation of their request for attorneys' fees relative to the motion for summary judgment brought before Judge Owen, an affidavit of Bernard M. Plum, Esq., sworn November 16, 1987 ("Plum Affidavit II"), which includes, a computer printout detailing all time spent on the Harb case from April 1, 1987 through June 23, 1987. *See* Exh. 7. This printout is a summary of the contemporaneous billing records kept by the firm in connection with the Harb case. Tr. 17–20, 35–36. It includes the date the work was performed, recorded that day or, at the latest, the following day, the client for whom the work was performed, and a brief description of the work done. Tr. 17–20. From this printout a summary of the time the firm had spent preparing the summary judgment motion was culled. Tr. 35–36, Exh. 2 attached to Plum Affidavit II. To aid the Court in determining the reasonableness of a fees application, the fee-seeking party must submit detailed contemporaneous time records, reflecting for each attorney "the date, the hours expended, and the nature of the work done." *New York Ass'n for Retarded Child. v. Carey, supra,* 711 F.2d, at 1154. The records submitted by Proskauer Rose are adequate to fulfill this requirement.

These documents indicate that associate Susan B. Singley, Esq. ("Singley") spent 38.25 hours preparing the summary judgment motion, that partner, Bernard M.

---

**3.** These figures, Proskauer Rose informs us, are significantly less than the amounts normally billed by the firm. More specifically, the $8,800 amount requested for the motion for summary judgment is approximately $1,300 less than the amount normally billed by the firm, and the amount requested in connection with this fee application does not include the costs and fees involved with the firm's appearance at the hearing. *See* Tr. 7 and Memorandum in Support of Defendant Gallagher's Application for Attorneys' Fees, at 1-2.

Plum, Esq. (then a senior associate) spent 25.25 hours so involved, and that partner Allen I. Fagin, Esq. was involved with the Harb summary judgment motion for a total of 7 hours.

■ Proskauer Rose also indicates that it billed $230 an hour for work performed by Fagin, who has specialized in labor law since 1976. That Plum's time was billed out at a rate of $200 an hour for work he performed on the motion for summary judgment. Plum had specialized in labor and unemployment law since 1980. Tr. 11. Finally, $90 an hour was the rate charged for time spent on the Harb matter by Singley, a starting associate at Proskauer Rose.[4]

When examining the reasonableness of fees charged, the Court must look at the "hourly rate normally charged for similar work by attorneys of like skill in the area." *Grinnell II, supra,* 560 F.2d, at 1098. The "reasonableness [of fees] should be measured according to the normal rates in the legal community for substantial similar work by competent practitioners." *McCann v. Coughlin,* 698 F.2d 112, 130 (2d Cir.1983). No claim is made that the representation provided by Proskauer Rose in this matter was less than competent, nor that the work performed by them was inordinately simple. Thus, the inquiry is limited to whether the rates charged were in line with those of the Manhattan legal community.

A billing rate survey, conducted by the *National Law Journal* and published in the *New York Law Journal,* about 6½

months after Gallagher filed his motion to dismiss on May 7, 1989, indicates that the larger New York law firms were charging between $150 and $390 an hour for a partner's time, and between $85 and $230 for the time of associates, depending on the associate's experience. *See* Exh. 1 (*i.e.,* N.Y.L.J., November 16, 1987, at Page 1, Col. 3)[5]. The rates charged by Proskauer Rose in this matter, for the time of all attorneys involved fell, easily within the range of rates then charged by comparable large New York firms. Thus, we find these partner and associate rates to be fair and reasonable charges, reflective of the prevailing rates charged for substantially similar work performed by comparable lawyers in this community. Ranni presented no contradictory evidence.

■ We next consider whether the time billed by Gallagher's counsel, in connection with the summary judgment motion, was appropriate and reasonable. Ranni opposes the application, asserting that much duplicative work was performed in preparing the motion. He claims that the brief in *Harb I* could easily have been used in *Harb II,* since "similar documents and arguments were raised in *Harb I* which [would] reduce the amount of research" necessary. Tr. 104. He also complains of the review of documents, prepared by Singley, by both Plum and Fagin. *Id.*

These contentions are not supported by the documents submitted, nor by prudent practice. The motion to dismiss in *Harb I,* dealt with the merits of the Harbs' claims. *See* Memorandum in Response to Plain-

---

4. Ranni contends that Singley was merely a paralegal at Proskauer Rose. Tr. 11–13. Plum, however, testified that she had graduated from the Stanford University Law School, and was a member of the "bar of the City of New York." Tr. 12. We assume, of course, he meant the "State of New York." In any event, we decline to accept Ranni's bald assertion that she was merely a paralegal, as he produced absolutely no evidence to support his contention.

5. *See also The Lawyer's Almanac—1988,* by Prentice Hall Law & Business, which sets forth the 1987, and with respect to some law firms, the 1986, billing rates of some 52 law firms in 13 United States cities, with six of the larger New York City firms comparable to Proskauer

Rose in standing and size, reported. The hourly rates are given for "High Partner," "Low Partner," "High Associate" and "Low Associate." For our purposes, we deem Fagin a High Partner, Plum and Salvatore, senior associates, as High Associates, and Singley, as a Low Associate. Thus, the *Almanac* indicates that, as to those six New York City firms for 1987, for a High Partner, the hourly rates ran from a low of $210 per hour to $350, with an average of $294; for Low Partner, the hourly rates ran from $140 per hour to $200, with the average being $173; for a High Associate, the hourly rates ran from $150 to $220, with the average as $183; and for Low Associate, the hourly rates ran from $80 per hour to $120, the average was $94.

tiffs' Motion to Suppress the Deposition of Fred Harb and in Further Support of the UPS Defendants' Motion for Summary Judgment. It addressed the legal merits of the Harbs' claims, namely: 1) wrongful discharge, 2) violation of the duty of fair representation, 3) malicious prosecution, 4) abuse of process, 5) conspiracy, and 6) defamation. The brief accompanying the motion to dismiss in the instant action dealt, not with the merits of the Harbs' claims, but rather with the law of claim preclusion. *See* Memorandum in Support of the Motion by Defendant Gallagher to Dismiss the Complaint, at 10. Since the issues addressed were entirely different, the brief in *Harb I* would be essentially useless in preparing the brief accompanying the motion to dismiss in *Harb II*. Thus, there existed no duplication of effort in this regard.

■ Ranni's objection to the time spent in the review of documents by a member and senior associate of the Proskauer Rose firm is equally without merit. The practice of having research and drafting done by new associates works to the benefit of the client. It would be highly inefficient for a partner in a law firm to do the initial research involved in a case, then involve himself with the drafting of papers, and then becoming intimately familiar with every nuance of the case when preparing for oral argument, billing the client at $250 an hour, when an associate could perform the initial work, billing to the client at $90 an hour, with this work reviewed by a partner. Thus, this is not a duplication of effort, as Ranni contends, but, rather, a way to prepare a case in an efficient manner. Accordingly, we find that the work done by Fagin and Plum was not duplicative of the work done by Singley.

■ Similarly, fees charged for the presence of Plum at oral argument on the motion to dismiss are also compensable. Plum had been involved in *Harb I*, and was intimately familiar with the facts from that earlier case. It would have taken far longer to acquaint Fagin with the minutia of the earlier case than to simply accompany him to the argument to assist in the event a question arose.

As noted above, Proskauer Rose seeks $8,800 in connection with the motion for summary judgment. The actual time expended in preparation of the motion, multiplied by their hourly rates results in a total of $10,102.50.[6] Proskauer Rose, however, indicates that the difference was not billed to the client and, therefore, they do not seek it here. Nor does Gallagher seek to recover the costs associated with the motion. *See* Memorandum in Support of Defendant Gallagher's Application for Attorney's Fees, at 8. The fact that Gallagher does not seek to recover these costs more than compensates for any possible duplication of effort, which, in any event, we fail to discern and, therefore, Gallagher should be awarded the full amount sought in connection with the motion for summary judgment.

### The Application

Gallagher also seeks to recover $10,727 in attorneys' fees and costs incurred in making this application. Such fees and costs are recoverable. *Eastway Const. Corp. v. City of New York, supra,* 637 F.Supp., at 575; *Perez v. Velez,* 629 F.Supp. 734, 737–38 (S.D.N.Y.1985). In support of this application, Gallagher, through his attorneys, submits computer printouts, detailing all time spent on the *Harb* case from October 5, 1987 through April 9, 1988.

These printouts, (Exhs. 9 and 10), are a summary of the contemporaneous billing records kept by the firm in connection with the *Harb* case. Tr. 17–20, 71–78. They include the date the work was performed, (recorded that day or, at the latest, the following day), the client for whom the work was performed, and a brief description of the work done. Tr. 17–20.[7] From

---

**6.** This amount is the total of Singley's 38.25 hours multiplied by $90 per hour, equalling $3442.50, plus Plum's 25.25 hours multiplied by $200 per hour, equalling $5,050, plus Fagin's 7 hours multiplied by his billing rate of $230 per hour, equalling $1,610. *See* Plum Affidavit II, at 3.

**7.** Also included in Exh. 10 is a computer printout detailing the costs incurred in connection

this printout, as with the summary judgment motion, a summary of the time the firm had spent preparing the fee application was prepared. Tr. 79–81, Exh. 11. Again, this satisfies the requirement that contemporaneous time records be submitted. *New York Ass'n for Retarded Child. v. Carey, supra,* 711 F.2d, at 1154.

The records submitted demonstrate that Salvatore, an associate at Proskauer Rose for 4½ years, who had, during that period, worked primarily in employment and labor law, (Tr. 71), spent 25½ hours preparing the fee application. That Plum spent 24¼ hours involved with the fee application, and that Fagin was similarly devoted, but for 1½ hours. *See* Exh. 11.

■ For the work done on the fee application, Proskauer Rose billed Fagin's time out at a rate of $260 an hour. Plum, who became a member of the firm during the pendency of the fee application, was billed out at $200 an hour for the time he was an associate, and at $235 an hour when he was elevated to a partnership. Lastly, Salvatore's time was charged at a rate of $180 an hour. Tr. 11, 54. Although these rates are higher than those charged by Proskauer Rose in 1987 for the work done on the motion for summary judgment, we find the increases to be reasonable and comparable in light of increases imposed by other New York law firms of like size and quality. *See supra,* N.Y.L.J., November 16, 1987, Page 1, Col. 3 and n. 5. Thus, here too, we conclude that the rates charged in connection with the fee application were reasonable.

■ We also determine that the hours expended in the effort were reasonable. This determination is based on our review of the entire record, which failed to reveal that any time expended was clearly excessive, and which recognized the time demands this Court placed on the parties. For example, the time expended on the application for fees and costs required the presence of the defendants' attorneys at two conferences, and at the Court's request, that Gallagher (and plaintiffs, if

with the *Harb* case from January 1, 1988

they so desired) address in briefs whether the costs incurred in making and prosecuting the fee application could be recovered. It also recognizes that no more time was expended in the preparation of this motion than in preparing the summary judgment motion. The only difference is that Proskauer Rose has elected not to discount the time it spent on this motion as it did on the summary judgment motion. This fact, alone, does not cause the time spent to be deemed excessive. Thus, Gallagher's request for $10,727 in attorneys' fees should be granted.

In connection with the fee application, Gallagher also seeks to recover a portion of certain costs and disbursements. In this connection, he seeks, as stated by counsel Salvatore: "[T]he cost of the transcript $130, ... the time for our librarian, approximately a half hour, the process server, approximately a half hour of her time, and Mr. Plum's transportation costs for the two hearings from New York to White Plains," all reflected, he said, in Gallagher's Exhs. 9 and 10. *See* Tr. 99–100. Indeed, Exh. 9, at 3032, indicates that Ann Rauch spent .50 hour on "12/23/87" on this case, and the time charge was $32.50, while on page 3031 of Exh. 9, there is an entry on "11/18/87" for Katharine P. Neidorf for "filed aff. of BMP at SDNY,", expending ¼ hour in the process. *See also* Exh. 11, at 1. Further, on Exh. 10, there appears an item for "3/16/88" ascribed to Plum, reading, "Prep. for & Attend Conf. Re fees," expending 3 hours therefor. For "10/26/87," when counsel attended a conference before this Court relative to this matter, Exhs. 9 and 11 indicate for that date, that Plum "attended fee conf.," charging 3½ hours therefor. Gallagher seeks reimbursement for Plum's travelling costs of $14, reflected in Exh. 9, at 3033, under item "Fares (Local)"; $2.22 for out-of-office telephone calls, reflected in Exh. 10 under item characterized as "Long Dist. Tel. & Telex." The charge for the transcript in the sum of $130 (actually $130.25), relative to the conference before me on March 16, 1988, is reflected in the photocopy of a bill and

through April 22, 1988.

cancelled check evidencing payment and introduced as Exh. 12.

At the hearing, I directed Salvatore, then conducting the questioning on behalf of Gallagher, that after the hearing he is to isolate these miscellaneous items from the exhibits in evidence and send to Ranni and the Court a more detailed explanation relative thereto. Such explanation, entitled "Attorneys' Fees and Costs in Connection With Gallagher's Fee Application," was submitted. In preparing this Report and Recommendation, I found that the explanation was unclear and advised Gallagher's counsel that I require a far more detailed explanation of these miscellaneous costs and also advised Ranni of my direction to Gallagher's counsel. By letter, dated March 6, 1990, such further explanation was received and has been docketed and made part of the record.

The charge of $32.50 for Ms. Rauch, the Librarian, is disallowed, as overhead, as is Ms. Neidorf's charge of $15, who merely filed a Plum affidavit. We also disallow, as overhead, Plum's out-of-pocket telephone calls of $2.22 and "Fares (Local)" of $14.00. If Gallagher would argue that paralegal fees are reimbursable expenses, we would agree. *See e.g., Litton Systems, Inc. v. American Tel. and Tel. Co.,* 613 F.Supp. 824, 834 (S.D.N.Y.1985); *Selzer v. Berkowitz,* 477 F.Supp. 686, 690–91 and n. 3 (E.D.N.Y.1979). Where we disagree, is that the court does not find that either Ms. Rauch or Ms. Neidorf was engaged as paralegals.

With Gallagher's counsel's aforesaid letter of March 6, 1990, he submits for the first time a photocopy of a bill for the cost of the hearing transcript, taken April 25, 1988, in the sum of $548.25, together with a photocopy of the face of the check indicating payment thereof. Clearly, Gallagher is entitled to reimbursement of that cost. *See* 28 U.S.C. § 1920(2). Clearly, his counsel inadvertently failed to transmit the same to the Court after the bill was paid, a month after the hearing, on May 25, 1988, as reflected by the check. It will be allowed for I can discern no legitimate reason why it should not be allowed.

At the hearing, Ranni objected to Gallagher's request for reimbursement of the submitted charges of $130.25 for the transcript of the March 16, 1988 scheduling conference before me. *See* Exh. 12. We agree to the extent that not all of such cost should be allowed, in that, plaintiffs did not request the same, nor do we deem it altogether necessary. However, a reading and re-reading by Ranni of that transcript would and should have benefitted him, for he would have been reminded therein on numerous occasions that the purpose of the prospective hearing was solely to determine the amount of the attorneys' fees and costs to be assessed, not the merits of Judge Owen's decision. Although the fee application was not complex, it is apparent that the transcript was reasonably necessary to alert Ranni to the issues involved. *See Sperry Rand Corporation v. A–T–O, Inc.,* 58 F.R.D. 132, 137–38 (D.C.Va.1973). Since the transcript was reasonably necessary, we find that Gallagher is entitled to at least one-half of the costs of the transcript, or a total of $65.15.

### Other Factors

After computing the lodestar amount, a court may take into consideration other factors and adjust that amount upward or downward as necessary. *Peter Fabrics, supra,* 765 F.2d, at 318. There are no compelling reasons here to reduce the amount of the fees and costs awarded to a level below the lodestar amount. This is not Ranni's first taste of the requirements of Rule 11. He was ordered by Judge Conner in *Harb I* "to pay defendants' costs and reasonable attorney's fees" for bringing a frivolous action. *See Harb v. United Parcel Service, supra,* 123 LRRM, at 2974, 1985 WL 4850. Obviously, this was insufficient to alert Ranni to the consequences of filing frivolous actions, as he appears again with precisely the same claims. Bringing an action deemed frivolous a second time is clearly a far more serious violation of Rule 11 than a single violation. Far from counseling mitigation of the sanctions imposed, this calls for particularly heavy fines. *In re Itel Securities*

*Litigation,* 596 F.Supp. 226, 235 (N.D.Cal. 1984).

In addition to constituting a second offense, Ranni's dereliction was not a mere negligent violation of the Rule, as he had discussed indemnification with the Harbs in the event Rule 11 sanctions were again imposed. This, too, cries for heavy penalties, not mitigation, of any award imposed. *See e.g., Friedgood v. Axelrod,* 593 F.Supp. 395, 397 (S.D.N.Y.1984).

### Liability

▮ The defendant's Notice of Motion, dated May 6, 1987 (filed May 7, 1987), requested, in part, that the Court enter an order "pursuant to Rule 11 of the Federal Rules of Civil Procedure ordering *plaintiffs and their attorney* to pay Gallagher's attorneys' fees and costs for making this motion" (emphasis added). Judge Owen's aforementioned Endorsed Memorandum, dated September 4, 1987 (filed September 10, 1987), states, with regard to Gallagher's Rule 11 application, that "defendant Gallagher's motion is granted." Clearly then, Judge Owen intended that the plaintiffs and their attorney be held, jointly and severally, liable for the fees and costs awarded to Gallagher.[8]

### RECOMMENDATION

That an attorney would attempt to avoid the strictures of Rule 11 and our professional Code of Ethics by either extracting a promise from a client or a relative of the client to absorb the consequences of an improper filing, or agreeing to do so even at the unsolicited suggestion of such client or relative, when, as here, the attorney knows or should have reason to know that such filing violates Rule 11 or is otherwise improper, offends deeply and should not be countenanced. Thus, any order or judgment to be entered herein should specifically declare such indemnification agreement illegal and violative of the spirit, intent and purposes of Rule 11, Fed.R.Civ.P., and that such agreement should not be enforced in any respect, whatsoever.

Further, in light of the foregoing, a judgment should be entered in favor of defendant, George "Jerry" Gallagher, as against plaintiffs, Fred Harb, Mildred Harb and Robert R. Ranni, Esq., jointly and severally, for attorneys' fees and costs associated with said defendants' motion, filed May 7, 1987, in the total sum of $20,140.40, which is arrived at as follows:

| | |
|---|---|
| Attorneys' fees on motion for summary judgment | $ 8,800.00 |
| Attorneys' fees relative to fee application | 10,727.00 |

Costs:

| | |
|---|---|
| Transcript of March 16, 1988 | $ 65.15 |
| Transcript of April 25, 1988 hearing | 548.25 |
| | 613.40 |
| TOTAL: | $20,140.40 |

---

**8.** Though the plaintiffs and Ranni are jointly and severally liable, a strong argument could have been made, and should have been made, to the effect that Ranni be solely liable for the full amount. Undoubtedly, it was upon his advice to his lay and untutored clients that the first frivolous federal action was brought, resulting in its dismissal and assessment of costs and attorneys' fees. Despite his recognition of a *res judicata* "problem," he initiated this second frivolous action in the state court, later removed to this Court. His recognition of the seriousness of the "problem" and utter frivolity of the claims are further evidenced by the improper agreement reached with Harb's mother to "indemnify him for any sanctions awarded against him by the Court under Rule 11." That indemnification agreement is clearly violative of the spirit and intent of Rule 11 and we so find. Despite his reservations, but armed with the assurance that no monies, as sanctions, would be paid from his pockets, he blithely and with seemingly indifferent abandon violated, not only Rule 11, but also DR 2–109(A)(2) of the ABA Code of Professional Responsibility, which reads:

> A lawyer shall not accept employment on behalf of a person if he knows or it is obvious that such person wishes to:
>
> \*   \*   \*   \*   \*   \*
>
> (2) Present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by good faith argument for an extension, modification, or reversal of existing law.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(C), as amended, and Rule 72(b), Fed.R.Civ.P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed.R.Civ.P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed.R.Civ.P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Richard Owen, at Room 2903, at the United States Courthouse at Foley Square, New York City, 10007, and to the Chambers of the undersigned, at the United States Courthouse, 101 East Post Road, White Plains, New York 10601.

A party who feels aggrieved by a recommended decision herein and who fails to file timely objections thereto, waives any right of appellate review of the District Court's order (or judgment) entered relative hereto. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair,* 838 F.2d 55, 58 (2d Cir.1988). Requests for extensions to file objections shall be made to the Judge and shall *not* be made with the Magistrate.