Eleanor **MONAGHAN**, Individually and as Guardian Ad Litem for William Monaghan, an incompetent, Plaintiffs,

v.

**SZS 33 ASSOCIATES, L.P.**, a Delaware Limited Partnership, Defendant.

**SZS 33 ASSOCIATES, L.P.**, a Delaware Limited Partnership, Third–Party Plaintiff,

v.

The **PORT AUTHORITY OF NEW YORK AND NEW JERSEY**, and Port Authority Trans–Hudson Corp., Third–Party Defendants.

**SZS 33 ASSOCIATES, L.P.**, a Delaware Limited Partnership, Second–Third–Party Plaintiff,

v.

**TISHMAN CONSTRUCTION CORPORATION OF NEW YORK**, McLane Security, Inc., Second–Third–Party Defendants.

No. 89 Civ. 4900 (RWS).

United States District Court, S.D. New York.

April 1, 1994.

Levy Phillips & Konigsberg, New York City, for plaintiffs; Alan J. Konigsberg, of counsel.

Bower & Gardner, New York City, for defendant SZS 33 Associates, Inc.; Warren Sanger, of counsel.

Lester Schwab Katz & Dwyer, New York City, for defendant R.B. McLane Associates, Inc.; Adam Hurwitz, of counsel.

Gordon & Silber, New York City, for defendant Tishman Const. Corp.; Steven Sold, of counsel.

The Port Authority of New York and New Jersey, New York City, Keith Harris, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Eleanor Monaghan, individually and as guardian *ad litem* for her husband William Monaghan ("Monaghan," collectively, the "Plaintiffs"), move for an award of attorney fees and expenses pursuant to this Court's Opinion of May 5, 1993, *Monaghan v. SZS 33 Assocs., L.P.*, 148 F.R.D. 500 (S.D.N.Y.1993) (*"Monaghan V"*). Defendant and third-party plaintiff Silverstein 33 Associates, L.P. ("SZS") opposes Plaintiffs' award request.

Oral argument was heard on January 12, 1994 and the application was considered fully submitted as of that date.

### The Parties

The Monaghans are natural persons who reside and are domiciled in the State of New Jersey.

SZS, a Delaware limited partnership, owns property in the State of New York, specifically, the property located at 1275 Broadway in New York City, formerly known as the Gimbels' Building (the "Premises").

McLane and Tishman are corporations duly organized and existing under the laws of the State of New York.

The Port Authority of New York and New Jersey (the "Port Authority") and the Port Authority Trans–Hudson Corp. ("PATH"), are governmental entities duly organized and existing under and by virtue of the laws of

the States of New York and New Jersey and operate a public railroad transportation system.

### The Facts and Prior Proceedings

The facts and prior proceedings in this diversity action are fully set forth in the prior opinions of this Court, familiarity with which is assumed. *See Monaghan v. SZS 33 Assocs., L.P.*, 153 F.R.D. 60 (S.D.N.Y.1994) (*"Monaghan VII"*); *Monaghan v. SZS 33 Assocs., L.P.*, 827 F.Supp. 233 (S.D.N.Y.1993) (*"Monaghan VI"*); *Monaghan v. SZS 33 Assocs., L.P.*, 148 F.R.D. 500 (S.D.N.Y.1993) (*"Monaghan V"*); *Monaghan v. SZS 33 Assocs., L.P.*, No. 89 Civ. 4900, 1992 WL 135821, 1992 U.S.Dist. LEXIS 7864 (S.D.N.Y. June 1, 1992) (*"Monaghan IV"*); *Monaghan v. SZS 33 Assocs., L.P.*, No. 89 Civ. 4900, 1991 WL 156377, 1991 U.S.Dist. LEXIS 10943 (S.D.N.Y. Aug. 8, 1991) (*"Monaghan III"*); *Monaghan v. SZS 33 Assocs., L.P.*, 760 F.Supp. 355 (S.D.N.Y.) (*"Monaghan I"*), *aff'd*, 953 F.2d 635 (2d Cir.1991) (unpublished summ. order) (Nos. 91–7781, 91–7803, 1991 WL 281446, slip. op. (2d Cir. Dec. 5, 1991), referred to as *"Monaghan II"*). Only those facts relevant to the instant motions are presented below.

On March 23, 1987, Monaghan was shot in the head and severely brain damaged during an attempted robbery. The attack took place as he passed through a vestibule or lobby area (the "Vestibule") and descended a stairway ("Stairway 307," originally Stairway No. 1) located on the Premises. He was on his way to the train station operated by PATH and the Port Authority located beneath the Premises.

At the time of the attack, the old Gimbels' Building on the Premises was closed, and SZS had contracted with Tishman to undertake an extensive renovation and construction project on the Premises.

On July 14, 1989, the Plaintiffs brought a diversity action against SZS on a theory of premises liability for negligently and knowingly permitting a dangerous condition to exist upon its premises (the *"SZS Action"*). On December 28, 1990, the Plaintiffs brought a diversity action against McLane and Tishman on a theory of liability for negligently, recklessly, and carelessly securing the Premises and thereby proximately causing Monaghan's injury (the *"McLane Action"*).

After two rounds of discovery, SZS moved for summary judgment. In *Monaghan I*, based upon SZS' representations, this Court granted that motion on alternative grounds: first, SZS did not owe Monaghan a duty of care because it was the dominant estate owner only with regard to the Vestibule, not Stairway 307 on which Monaghan was attacked;[1] second, even if the attack took place in the Vestibule, the danger of criminal assault there was not foreseeable; and third, even if the attack took place on Stairway 307, SZS owed Monaghan no greater duty of care than if the attack occurred in the Vestibule.

In its summary order affirming *Monaghan I*, the Second Circuit held that, because the Plaintiffs could identify only two reported crimes which had occurred in the vestibule areas prior to the attack on Monaghan, the Plaintiffs had failed to advance sufficient evidence to create an issue regarding the duty of care SZS allegedly owed Monaghan. *See Monaghan II*, slip op. at 3.

As set forth in detail in *Monaghan IV* and *Monaghan V*, the Plaintiffs' subsequent motion to vacate the summary judgment and reinstate this action was granted after this Court found that SZS had deliberately failed to produce various relevant documents. In *Monaghan V*, this Court also granted the Plaintiffs relief pursuant to Rule 37, Fed. R.Civ.P., in the form of "precluding SZS from raising as a defense the issue that it was not on notice regarding the condition of the Premises or the criminal activities taking place thereon." 148 F.R.D. at 511.

Following the reinstatement of this action, SZS was granted permission to implead PATH and the Port Authority as third-party defendants. SZS filed the third-party complaint naming them as third-party defendants on July 14, 1992. SZS also was granted permission to implead McLane and Tishman as second third-party defendants, and

---

1. PATH was held to be the dominant owner of an easement on the Premises that included the stair- way.

SZS filed that second third-party complaint on September 21, 1992. The *SZS Action* and the *McLane Action* were consolidated under the single caption set forth above by order of the Court on July 8, 1992.

In *Monaghan VI*, the Rule 56, Fed.R.Civ. P., motions for an order granting defendants and second third-party defendants McLane and Tishman summary judgment against the Plaintiffs were granted. The Rule 56 motions of the Port Authority and of PATH, for order granting them summary judgment against SZS' third-party complaint were denied. The motion of defendant and third-party plaintiff SZS, brought pursuant to Rule 56, for an order granting summary judgment in its favor against the Plaintiffs was denied as was the motion, brought by SZS and McLane pursuant to Rule 42, Fed.R.Civ.P., for bifurcated trials on the issues of liability and damages. Finally, the motion of SZS and McLane for an order excluding Monaghan from the courtroom during the trial was granted.

In *Monaghan VII*, this Court denied Defendant SZS' motion for certification to appeal, pursuant to 28 U.S.C. § 1292(b), as well as its motion to reargue, pursuant to Local Rule 3(j), the Court's opinion in *Monaghan VI*, which denied SZS' motion for summary judgment. Likewise, the Court denied Plaintiff Eleanor Monaghan's motion to reargue, pursuant to Local Rule 3(j), the Court's decision in *Monaghan VI* dismissing the action against defendants and second third party defendants McLane and Tishman as time barred.

### Discussion

The current action arises pursuant to the Court's opinion in *Monaghan V* which directed that defendant SZS would be responsible for attorney fees and expenses necessary to uncover the defendant's fraudulent misconduct:

> ... Plaintiffs are requested to submit an itemized statement of the reasonable expenses and attorney's fees they have incurred in opposing SZS's motion for summary judgment, appealing the decision in *Monaghan I*, bringing the Rule 60(b)(1) and 60(b)(2) motions, and bringing the present Rule 37(b) motion.

*Monaghan V*, 148 F.R.D. 500, 513 (S.D.N.Y. 1993). The award of attorney fees was pursuant to the finding that the imposition of sanctions against SZS would best serve the three underlying purposes of Rule 37, to wit: (1) to ensure that a party will not be able to profit from its failure to comply with discovery requirements; (2) to act as a specific deterrent in securing compliance with a particular order; and (3) to act as a general deterrent in enforcing adherence to the courts overseeing parties to litigation. *See Monaghan V*, 148 F.R.D. at 508 (citing *Int'l Mining Co. v. Allen & Co.*, 567 F.Supp. 777, 788–89 (S.D.N.Y.1983)).

In essence, SZS raises three claims in opposition to Monaghan's affidavit in support of attorneys' fees and expenses. First, SZS challenges the Court's authority to impose sanctions pursuant to Rule 37(b)(2). Second, SZS contests Monaghan's actual fee application itself on the grounds that counsel in this Circuit may not be compensated for attorney's fees in the absence of contemporaneous time records. Third, SZS challenges the rates charged as well as the amount of time allocated for certain of the purported services.

### A. This Court Has the Authority to Impose Sanctions Pursuant to Rule 37(b)

The gravamen of SZS' first contention is that there was no order issued by this Court and therefore SZS did not owe a duty of disclosure to the Plaintiff. In this first claim, SZS essentially seeks to re-litigate the issue previously resolved in *Monaghan V:*

> The threshold issue of whether SZS had an obligation to produce documents in conformity with formal discovery orders is satisfied by two orders which existed for Rule 37 purposes, namely, the so-ordered Stipulation of July 23, 1990 and the Opinion set forth in *Monaghan IV*. The Stipulation defined the scope of discovery as agreed to by SZS and the Plaintiffs, and *Monaghan IV* identified those documents that fell within the scope of the Original Request. In reinstating the Plaintiffs' action in *Monaghan IV*, the Court concluded

that "SZS's failure to turn over these documents constituted misconduct within the Rule 60(b)(2)'s terms."

*Monaghan V,* 148 F.R.D. at 509. Accordingly, the Court held that the Stipulation and *Monaghan IV* "constitute formal discover[y] orders, and SZS' failure to comply with them triggers the sanctioning mechanism of Rule 37." *Id.* Since formal discovery orders exist in this case, Rule 37(b) sanctions were appropriately issued by this Court in conformance with the holding of *Alyeska Pipeline. See Alyeska Pipeline Service Co. v. Wilderness Soc.,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (holding that federal courts may not award attorneys' fees absent explicit statutory authorization.). The Court further set forth in detail the scope of SZS' negligence, *id.* at 509–10, the finding that SZS could not offer any mitigating excuses, *id.* at 510, and an analysis of the appropriate sanction to be applied, consistent with Second Circuit law, *id.* 510–11.

In support of its proposition, SZS half-heartedly cites a footnote from a Ninth Circuit decision which reversed a district court's award of fees which were not caused by a failure to obey an order. *See Toth v. Trans World Airlines, Inc.,* 862 F.2d 1381, 1386 n. 2 (9th Cir.1988). However, a sole citation from a Ninth Circuit footnote does not adequately rebut this Court's lengthy discussion of Second Circuit law and its application of Rule 37 sanctions, *see Monaghan V,* 148 F.R.D. at 507–09. As that Opinion noted, "[t]he Second Circuit [ ] has held that the ... the failure to comply with any court-issued discovery order can trigger Rule 37 sanctions." *Id.* at 508 (citing *Daval Steel Products, Div. of Francosteel Corp. v. M/V FAKREDINE,* 951 F.2d 1357 (2d Cir.1991)).

Additionally, in *Monaghan V* this Court indicated that it was free to invoke its inherent equitable powers and sanction a party for failure to cooperate with discovery even in the absence of a formal discovery order. *See, Monaghan V,* 148 F.R.D. at 508 n. 11 (citing *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 73 (S.D.N.Y.1991); *Computer Assoc. Int'l, Inc. v. American Fundware, Inc.,* 133 F.R.D. 166, 168 (D.Colo. 1990)); *see also Chambers v. NASCO, Inc.,*

501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (holding that federal district courts have inherent powers to manage their own proceedings including the assessment of sanctions for parties' bad faith conduct).

### B. *Only Contemporaneous Time Records May Be Compensated*

■ SZS' next claim—contesting the payment of Monaghan's attorneys' fees in the absence of contemporaneous time records—presents a more formidable obstacle to the fee request. Generally, fee awards in this Circuit are computed under the lodestar method, which multiplies the hours reasonably spent by counsel times a reasonable hourly rate. *See City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 470–73 (2d Cir. 1974), *rev'd on other grounds,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098–99 (2d Cir.1977); *Mar Oil, S.A. v. Morrissey,* 982 F.2d 830, 841 (2d Cir.1993) (citing cases).

On June 15, 1983 the Second Circuit changed its previously stated preference for contemporaneous time records to a mandatory requirement. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983) (holding that "the difficulties raised by the lack of contemporaneous records in this case convince us of the need to announce for the future that contemporaneous time records are a prerequisite for attorney's fees in this Circuit.") ("*Carey* "). In its own summary of its ruling for the "guidance of the bar in future cases," the *Carey* Court stated that "[a]ll applications for attorney's fees ... for any work done after the date of this opinion should *normally* be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1154 (emphasis added).

Since *Carey,* the Court of Appeals has ruled that in accordance with New York law, "[t]he burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous

records have not been kept the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987).

■ Monaghan's attorneys contend that since this case is a simple personal injury case and, as a result, they are retained on a contingency fee basis, there was no need to keep such records, and to now retroactively mandate such records would, in effect, unfairly require them to have predicted SZS' abusive discovery practices. Implicitly they urge this Court to carve an exception out of the *Carey* contemporaneous time record rule for personal injury cases based on contingency representation. Upon a review of the relevant case law, it would appear that this is an issue of first impression in this Circuit.

■ As a general rule, a party seeking an award "should submit evidence supporting the hours worked and rates claimed. Where documentation of hours is inadequate, the district court may reduce the awards accordingly." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). On this basis, the Second Circuit recently vacated a trial court's unquestioning acceptance of an attorney's hourly assessment unsupported by contemporaneous time records and remanded to the trial court for "further findings" on the question of the number of hours expended. *See Mar Oil, S.A. v. Morrissey,* 982 F.2d 830, 840 (2d Cir.1993).

On the other hand, the courts in this Circuit intermittently have seen fit to adopt roughly a 30% fee reduction rule for an attorney's failure to keep contemporaneous time records of their services. *See, e.g., Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10 etc.,* 749 F.2d 1000, 1008 (2d Cir.1984) (reducing attorney's hourly estimate which was unsupported by contemporaneous time records by 30%; noting much of the litigation occurred prior to *Carey* ); *Orshan v. Macchiarola,* 629 F.Supp. 1014, 1019 (E.D.N.Y.1986) (holding lack of

contemporaneous time records "would justify a 30% reduction as a sanction for noncompliance ... however, in light of the record and the case law the Court must disallow a larger number of hours.") (citations omitted); *Johnson v. Kay,* 742 F.Supp. 822, 836–37 (S.D.N.Y.1990) (accepting reconstructed time records, but reducing amount of award by 20% as a penalty); *Carrero v. New York City Housing Authority,* 685 F.Supp. 904, 908–09 (S.D.N.Y.1988) (denying 35% rate reduction for failure to provide contemporaneous time records to the court), *modified on other grounds,* 890 F.2d 569 (2d Cir.1989). *See also Hensley v. Eckerhart,* 461 U.S. 424, 438 n. 13, 103 S.Ct. 1933, 1942 n. 13, 76 L.Ed.2d 40 (1983).

■ Generally, "attorney's fees are to be awarded with an eye to moderation seeking to avoid either the reality or the appearance of awarding windfall fees." *Harb v. Gallagher,* 131 F.R.D. 381 (S.D.N.Y.1990). While hesitating to rule that this is the "abnormal" case for *Carey* purposes, and hence making a "personal injury" bar exception to the contemporaneous time record requirement, it does appear that although it was unwise, it was not unreasonable for Monaghan's attorneys to neglect to keep such records based on their contingency fee arrangement. Accordingly, in the interest of equity,[2] this Court will reduce the amount of hours expended in the reconstructed time records by 30%.

## C. *Specific Challenges on Rates*

■ SZS has raised numerous claims contesting the fee application, however, as the Supreme Court has admonished, "[a] request for attorneys' fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). On a fee application, the claimant has the initial burden of documenting and proving its claims. *Id.* Although a fee application hearing is a possibility, to the extent that the Plaintiffs have met

**2.** It must be remembered that this Court may award attorneys' fees solely on the basis of its inherent equitable powers. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (holding District Court properly invoked its inherent powers—outside of Rule 11 or § 1927 or other statutes—in assessing as a sanction for plaintiff's bad faith conduct attorney's fees and related expenses paid by NASCO.).

their burden in the moving papers, their fee application is granted, in part, pursuant to the parameters set forth below.

### 1. *Reasonable Hourly Rates*

 In setting the hourly rate for attorney fees, the courts apply the prevailing market rates of the relevant legal community. *See Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984) (holding attorneys must demonstrate their fees are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."); *Reyes v. Secretary of Health & Human Servs.*, 807 F.Supp. 293, 297 (S.D.N.Y.1992). As a general matter, the relevant community for fee determination is the judicial district in which the trial court sits, *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987), in this case, the Southern District of New York. *See also Shlomchik v. Richmond 103 Equities Co.*, 763 F.Supp. 732, 743–44 (S.D.N.Y.1991) (awarding suburban Philadelphia attorney a higher New York City rate as action was litigated in Southern District); *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987) (judge may determine reasonable fees based on his or her knowledge of prevailing community rates).

 Defense counsel has not stated a legal basis for her objection that Plaintiffs' counsel's hourly rates are unreasonable except that her own firm billed at lower rates for the period in question and that this is merely a negligence suit. However, given that this is now the eighth opinion in this case, which has yet to reach trial, it appears to this Court that this is not the run of the mill "negligence" suit.

 However, pursuant to the standards stated above and a review of the relevant case law, hourly billing rates ranging from $315 to $350 for partners and $155–$190 for associates appear to be somewhat high for the nature of this action in this geographical area.[3] Accordingly, Plaintiffs' counsel partners' hourly rates will be revised downward to a rate of $250 for work in 1990, $275 for work in 1991, and $300 for work in 1992 and 1993; likewise their associates' rates will be revised downward to reflect a rate of $120 for work in 1990, $140 for work in 1991, and $160 for work in 1992, and $180 for work in 1993.

### 2. *Plaintiffs Must Describe of Services Rendered With Specificity and in Conformance with Monaghan V*

 For the reasons stated above, in the absence of contemporaneous time records, detailed reconstructed records will be permitted, although with a penalty. In rejecting time records with one word descriptions for an entire day's work, the Second Circuit noted that the "burden is on counsel to keep and present records from which the Court may determine the nature of the work done, the need for and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987). In *Orshan v. Macchiarola*, 629 F.Supp. 1014, 1019 (E.D.N.Y.1986), the court disallowed a claim for fees for time supported only by such vagaries as "prepare correspondence" and "review correspondence."

However, for the most part, such is not the case here as Plaintiffs' counsel has submitted a rather comprehensive summary of their reconstructed records. The Supreme Court

---

**3.** *Cf. Ortiz v. Regan*, 777 F.Supp. 1185 (S.D.N.Y. 1991) ($250 per hour), *aff'd in part and rev'd in part on other grounds*, 980 F.2d 138 (2d Cir. 1992); *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1477, 1481 (E.D.N.Y.1989) (awarding $150 to $250 per hour for partners; $50 to $120 per hour for associates for work performed in 1988), *rev'd on other grounds*, 907 F.2d 1295, 1327 (2d Cir.1990); *Williams v. City of New York*, 728 F.Supp. 1067 (S.D.N.Y.1990) ($200 per hour for work performed in 1988–89);

*Suarez v. Ward*, 88 Civ. 7169, 1993 WL 158462, 1993 U.S.Dist. LEXIS 6308 (S.D.N.Y. May 13, 1993) ($200 per hour for work performed in 1988–92); *Carrero v. New York City Hous. Auth.*, 685 F.Supp. 904 (S.D.N.Y.1988) ($150 per hour for less experience attorneys); *Wilder v. Bernstein*, 725 F.Supp. 1324 (S.D.N.Y.1989) ($200–250 per hour for work performed in 1987–89), *rev'd on other grounds*, 944 F.2d 1028 (2d Cir. 1991).

has found that "plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended, but at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12. Plaintiffs' counsels' reconstructed time records, for the most part, meet this burden. Accordingly, to the extent billing records list the precise date, the attorney who worked on the matter, a concise description of the work product, the amount of time expended, and the dollar amount billable, fees may be allowed.

■ In *Monaghan V*, the Court awarded reasonable attorneys' fees and expenses in-curred in opposing SZS' motion for summary judgment, appealing the decision in *Monaghan I*, bringing the Rule 60(b)(1), 60(b)(2) and 37(b) motions. *See Monaghan V* 148 F.R.D. at 513. To the extent Plaintiffs' fee application does not fall within these guidelines, such hours will be deducted. Further, all time billed in December of 1991 will be deleted as there are no specific dates provided for work conducted in that month. Accordingly, the following will be eliminated from counsel's reconstructed records as beyond the scope of this directive:

*Deductions From Plaintiffs' Fee Application:*

| Date | Hours | Item & Reason for Deduction |
|---|---|---|
| 11/21/90 | 7.0 | Golanski's review and analysis of Defendant SZS' notice of motion for protective order pursuant to Fed.R.Civ.P. 26. not within scope of *Monaghan V*. |
| 12/91 | 54.0 | Philips, Perlman, Golanski, and Konigsberg[4] work product is not date specified for this entire month. |
| 6/26/92– 7/10/92 | 39.0 | Perlman and Konigsberg work on opposing SZS' motion for certification pursuant to 28 U.S.C. § 1292(b) not within scope of *Monaghan V*. |
| 7/16/92– 7/21/92 | 25.3 | Perlman and Konigsberg work on interrogatories not within scope of *Monaghan V*. |
| 12/23/92 | 10.0 | Perlman, Konigsberg, and Philips work regarding discovery schedule not within scope of *Monaghan V*. |
| 135.30 | | Total number of hours deducted. |

Out of the 580 hours originally claimed by Plaintiffs' counsel, only 444.70 are appropriately attributed to the sanction meted out in *Monaghan V*. This 444.70 hours shall be reduced per work unit by an additional 30% in accordance with the findings above.

**3. Expenses**

■ Plaintiffs' counsel has provided only a summary of their expenses which total $15,163.75. *See* Pl.s' Ex. 1. These expenses will not be awarded absent a detailed accounting of the expenses which ties the pur-ported expenses with a specified legal product. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1269 (2d Cir.1987) (reducing award for expenses by 25% where records were "inadequate to permit a determination of the nature or timing of the activities that required most individual expenditures[.]"); *Carrero v. New York City Housing Authority*, 685 F.Supp. 904, 909–10 (S.D.N.Y.1985) (disallowing fees for inadequate documentation of expenses), *modified on other grounds*, 890 F.2d 569 (2d Cir.1989). Upon an appropriate showing, Plaintiffs' expenses shall be awarded.

4. There is also an entry for a "DP," although no time appears to be billed for this unidentified individual. However, all entries for this attorney will be deleted in the absence of his or her identification.

## Conclusion

Plaintiffs' counsels' fee application, pursuant to the Opinion in *Monaghan V* awarding sanctions against defendant SZS, is granted in conformance with the findings above. Settle order on notice.

It is so ordered.