■ JUDITH WHITE et al., Plaintiffs, and SALLY ANN CLARENCE et al., Respondents, v DAIMLERCHRYSLER CORPORATION et al., Defendants. KERRY E. CONNOLLY, Nonparty Appellant. [871 NYS2d 170]—

On August 24, 2002 nonparty Angela Dufont was driving a van with eight passengers, one of whom was an adult (Jeanette Penny) and seven of whom were children (Joshua Dufont, Denasia Hodge, Candace Brown, Julie Brown, Mark Penny, Bevin Williams, and Basil Williams). While driving on a divided highway in Pennsylvania, the driver lost control of the van when the right rear tire blew out. During the resulting crash, the van barrel-rolled across the median and became airborne before landing in the lanes of oncoming traffic. All of the children were ejected from the van and sustained varying degrees of injury. Joshua Dufont sustained, inter alia, intercranial bleeding, a left femoral neck fracture, a spinal fracture, a hip fracture, and injury to his right shoulder, and was rendered comatose. Candace Brown sustained, inter alia, a broken femur and a severe impact to her face, resulting in the loss of several teeth. Julie Brown sustained, inter alia, a splenic fracture and contusions to her lungs. Mark Penny sustained, inter alia, a broken femur, a head injury, and various lacerations. Denasia Hodge sustained, inter alia, a closed head injury, and various cuts and abrasions. The adult passenger (Jeanette Penny), who remained in the vehicle, died. The appellant Kerry E. Connolly was retained to litigate an action on behalf of the estate and the husband of Jeanette Penny, and on behalf of these five infant passengers.

In investigating the accident, Connolly identified and spoke to other attorneys who had handled similar claims, shipped the van to an accident reconstruction expert in North Carolina, and sent the damaged tire to a laboratory for testing. Based on such inquiries, Connolly determined that there were at least two potentially culpable parties other than the driver. First, she concluded that the tire at issue had been improperly repaired and was not the proper size for the van. Consequently, she named Fred Flat Fix, Wilfredo Cortez, Wilfredo Cortez, doing business as Fred Flat Fix (hereinafter collectively Fred Flat Fix), and "ABC Corp" as defendants. Second, she concluded that the van had a faulty liftgate latch, which allowed the liftgate to open during the accident. Consequently, she named the manufacturer of the van, DaimlerChrysler Corporation (hereinafter DaimlerChrysler), as a defendant. The driver's insurer agreed to settle the action insofar as asserted against her for the full amount of her policy. DaimlerChrysler agreed to settle the action insofar as asserted against it for a stated sum. The proposed infant's compromise order provided for, inter alia,

lump sum payments to the estate and husband of Jeanette Penny, and structured settlements for the infant plaintiffs in amounts proportionate to the injuries suffered. Connolly also requested an award of an attorney's fee in a sum consistent with her retainer agreement, representing one third of the net settlement from DaimlerChrysler and 25% of the net settlement from the driver's insurer. The Supreme Court approved so much of the proposed infant's compromise order as concerned the amounts recovered by the infant plaintiffs, but awarded Connolly an attorney's fee in a sum representing approximately 25% of the aggregate net settlement. We affirm the infant's compromise order insofar as appealed from.

Judiciary Law § 474 sets forth the general rule as to attorney compensation, providing that "[t]he compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law." However, despite the broad wording of the statute, the ability to contract for an attorney's fee is not unbounded. For example, both this Judicial Department and others have promulgated rules setting parameters on what will be deemed fair and reasonable compensation on a contingency fee basis in an action to recover damages for personal injury or wrongful death resulting from negligence or any type of malpractice, other than one alleging medical, dental, or podiatric malpractice (*see* 22 NYCRR 691.20 [e]; 603.7 [e]). Further, by statute, if the action involves an infant, a judicially-declared incompetent, or a conservatee, the settlement of the action, including the amount of the attorney's fee, must be approved by the court (*see* CPLR 1207). This requirement arises from the court's duty to protect infants and other wards of the court (*see generally Valdimer v Mount Vernon Hebrew Camps,* 9 NY2d 21 [1961]; *Cuyno v Cuyno,* 61 NYS2d 530 [1945]).

Judiciary Law § 474 expressly exempts, from the general rule, a contingency fee agreement between an attorney and a guardian of an infant, and provides that such agreements are always "subject to the power of the court, as hereinafter provided, to fix the amount of such compensation." Pursuant to the statute, the court "shall proceed summarily to determine the value of the services of said attorney, taking such proof from either the attorney or the guardian by affidavit, reference or the examination of witnesses before the said court, judge or surrogate, as may seem to be necessary and proper, and shall thereupon make an order determining the suitable compensation for the attorney for his services therein" (*id.*). Judiciary Law § 474 does not define "suitable compensation." Further, the Legislature's

intent concerning this procedure cannot be discerned. No bill jackets or other sources of legislative history are available for 1912, the year in which the statute was amended to expressly exempt agreements between attorneys and guardians of infants (L 1912, ch 229), and research had not revealed any subsequent legislative materials discussing the intent behind the amendment. Similarly, research has not revealed any case or treatise comprehensively analyzing the definition of the term "suitable compensation."

However, an early case addressing the relevant amendment to Judiciary Law § 474 stated that "[t]he plain purpose of this statute is to insure court control of the amount to be received by an attorney for his services to the guardian of an infant plaintiff. The right to make a contingent agreement with the guardian by the attorney depends entirely for its validity upon the subsequent approval of the court, which is to be applied for when judgment has been obtained in favor of the guardian, or a compromise or settlement had with the defendant. The court is then to determine the value of the services rendered by the attorney, and this, of course, regardless of what agreement he and the guardian may have made. The question always remains one of the reasonable value of his services rendered, and the guardian is prohibited from paying or allowing the attorney any other or further compensation out of the estate of the infant. The contract, if any, between attorney and guardian, is required to be set forth in the petition, undoubtedly as one of the elements which the judge may take into consideration in fixing the reasonable compensation" (*Matter of Jeromer*, 228 App Div 123, 126-127 [1930]). Another early decision suggests that Judiciary Law § 474 was amended, "not only for the purpose of safeguarding the legal rights of infants, who are the wards of the courts, but to prevent the making of unconscionable agreements between guardians of infants and attorneys," which were apparently then commonplace and provided for fees of up to 50% of the recovery (*People v Schacht*, 132 Misc 560, 562 [1928]). Consequently, in rendering a determination as to "suitable compensation" within the meaning of Judiciary Law § 474, the court must determine the reasonable value of the legal services provided in light of all of the facts and circumstances, with consideration given to any agreement as to compensation, and award an amount consistent with such a determination and with the court's duty to ensure fair and adequate compensation for the infant. Here, applying this standard, we find that the attorney's fee awarded by the Supreme Court is "suitable compensation" within the meaning of Judiciary Law § 474 (*see* 22 NYCRR 691.20; *cf. Barretta v NBKL Corp.*, 298 AD2d 539

[2002]; *Brown v St. Mary's Hosp. of Brooklyn,* 293 AD2d 506 [2002]; *Liss v McCrory Stores Corp.,* 7 AD2d 738 [1958]).

Review of the materials submitted by Connolly reveals that she handled the case with skill, diligence, and expertise, and obtained a good result for her clients, in that she was successful in discovering at least three potentially negligent parties against whom recovery could be obtained. Further, she dedicated considerable time and labor to the case, and was in fact abandoned by her former partners during the course of the litigation. In addition, the attorney's fee requested was a customary fee charged by members of the Bar for similar services, and the certainty of compensation at the beginning of the case was far from established. Concomitantly, the bulk of Connolly's efforts were dedicated to the determination of causation and potentially liable parties, which were issues common to all of the plaintiffs. Consequently, while the amount of the recovery was commensurate with the number of injured parties, the time and effort needed to investigate and prosecute the case was not. Rather, although some factors varied as between the injured parties, such as the nature and extent of their injuries, the core inquiries into causation and liability required no more effort than that necessary to litigate the action on behalf of only one injured party. Moreover, there were more injured parties to be compensated from the same limited pool of funds. Finally, we note that the requested attorney's fee of one third of the recovery from DaimlerChrysler represents the upper limit, in general, of what is deemed reasonable under the rules of this Court (*see* 22 NYCRR 691.20 [e]; *cf.* 22 NYCRR 603.7 [e]). In light of all of these facts and circumstances, and weighing the competing interests, we find the amount of the attorney's fee awarded—approximately 25% of the net aggregate settlement—to be suitable compensation. In reaching this determination, we have not considered any attorney's fee awarded to Connolly pursuant to the separate settlement with Fred Fix Flat, or the alleged reduction of the instant fee based on a purported "understanding" that Connolly would receive one third of the net settlement from Fred Fix Flat, since both issues are dehors the record. Ritter, J.P., Miller, Dillon and Angiolillo, JJ., concur.