**Micaela MARTEGANI,
et al., Plaintiffs,**

v.

**CIRRUS DESIGN CORP.,
et al., Defendants.**

No. 08 Civ. 8809(KNF).

United States District Court,
S.D. New York.

Jan. 22, 2010.

spect of documents withheld on grounds of     privilege.

James Housley Furman, Byrd Davis Furman, Austin, TX, Justin M. Blitz, Paul Neal Schlemmer, Shandell, Blitz, Blitz & Bookson, LLP, New York, NY, for Plaintiffs.

Oliver K. Beiersdorf, Patrick E. Bradley, Reed Smith LLP, New York, NY, for Defendants.

## REDACTED[1] MEMORANDUM AND ORDER

KEVIN NATHANIEL FOX, United States Magistrate Judge.

## INTRODUCTION

Micaela Martegani ("Martegani") commenced the above-captioned action, in 2008, alleging Cirrus Design Corporation ("Cirrus"), and East End Aviation ("East End") (collectively, "the defendants"), were responsible for a plane crash, which resulted in the death of Martegani's husband, Ivano [redacted] ([redacted]).[2] Martegani proceeds individually, and as the natural guardian and mother of [redacted] ("the minor child"),[3] her minor child. In the complaint, Martegani sought damages for the wrongful death of [redacted]. The parties have negotiated a disposition, through which the claims against Cirrus and East End will be compromised and settled. They seek the Court's approval of the terms and conditions under which claims, of an infant, will be resolved, as well as an order awarding costs and reasonable attorney's fees to the plaintiffs' counsel.

## BACKGROUND

The instant claims arise from an accident, on September 15, 2006, when a Cirrus SR–20 aircraft crashed, [redacted] in Moffat County, Colorado, near the Colorado/Wyoming border. At the scene of the crash, was pronounced dead. It is alleged that Cirrus "designed, manufactured, assembled, distributed, sold, inspected, tested, serviced, maintained and repaired" the SR–20 aircraft involved in the crash, and that East End "owned, maintained and operated the subject aircraft." It is alleged further that, on September 15, 2006, "the subject aircraft departed controlled flight due to the improper design, manufacture and testing of the SR–20 aircraft,

1. For the safety and security of the infant plaintiff, a redacted copy of this Memorandum and Order is being filed with the Clerk of Court for public viewing.

2. Ballistic Recovery Systems, Inc. was also named as a defendant; however, the claims asserted against this entity were dismissed, without prejudice, in January 2009.

3. In order to preserve the minor child's anonymity and privacy, the Court is identifying the minor child by using initials.

including but not limited to its dangerous handling, stall and spin characteristics." When the recovery system was employed, in an effort to respond to the aircraft's departure from "controlled flight," it failed to function properly, causing the aircraft to crash into the ground.

Martegani submitted an affidavit to the Court, dated September 17, 2009, in which she requested that the Court approve the wrongful death compromise and settlement that had been negotiated with the defendants. Through her affidavit, Martegani declares that: (1) she is the surviving spouse of [redacted]; (2) she resides with [redacted], in [redacted], where she had also resided with the decedent; (3) letters of guardianship were not issued, since Martegani is the natural guardian of [redacted]; and (4) on September 6, 2007, Letters of Administration of the Goods, Chattels and Credits which were of [redacted], were issued to her by the [redacted] County Surrogate's Court. At the time of [redacted] death, Martegani was 40 years of age; her anticipated years of dependency were 32.5. [redacted] was [redacted] years of age, with [redacted] years of anticipated dependency. [redacted] was 46 years of age at his death; his anticipated life expectancy was 78.5 years.

This case was removed to federal court, from state court, in October 2008. Thereafter, negotiations commenced between Martegani and Cirrus. As a result, Cirrus and its insurer, Global Aerospace Insurance Company, made its final offer, in the amount of $[redacted], to settle the claims made against Cirrus. Negotiations among Martegani, East End and its insurance carrier, USAIG, were also held; and a final offer, in the amount of $[redacted],

was made to settle the claims made against East End. Accordingly, the total amount of settlement funds is $[redacted] ("Settlement Amount"). Martegani's affidavit states that, in applying the formula provided in *In re Kaiser's Estate*, 198 Misc. 582, 100 N.Y.S.2d 218 (N.Y.Sur.Ct. 1950), to the facts of this case, she is entitled to 82% of the Settlement Amount, and [redacted] is entitled to 18%.[4] However, Martegani wishes to depart from this formula and to allocate approximately 30% of the Settlement Amount to [redacted] ($[redacted]). After deducting attorney's fees and disbursements, Martegani would receive the remainder of the Settlement Amount.

James Furman, Esq. ("Furman"), counsel to the plaintiffs, submitted an affidavit, dated September 4, 2009, detailing his legal services and fees. With regard to his fees, Furman states that his fees and expenses were specified in the "contract of employment," into which he and Martegani had entered; that contract contains a contingency fee provision. In addition, pursuant to the agreement: (a) Furman's "case expenses" and/or disbursements, which total $6,447.69, are to be deducted from the settlement proceeds of $[redacted], leaving a balance of $[redacted]; (b) from this balance, a "reserve amount" of $5,000 is deducted for "future possible expenses"; and (c) a 28% attorney's fee "is to be applied" to the settlement amount, totaling $[redacted]. A copy of the "contract of employment" is attached to Furman's affidavit. In addition, Furman attaches an "itemization" of his "case expenses" for this litigation. This "itemization" provides what appears to be a description of each task or activity incurring a charge, the

---

4. In *In re Kaiser's Estate,* the distribution of a settlement to the decedent's spouse and next of kin was accomplished by dividing the net amount of settlement funds, based upon "the period they might reasonably have looked to decedent for support." *In re Kaiser's Estate,* 198 Misc. at 584, 100 N.Y.S.2d 218.

date such a charge was incurred, and the amount of, and interest on, each charge.[5]

On December 9, 2009, an infant compromise hearing was held, at which Martegani and [redacted] testified, and the Court questioned Furman, about the legal services he rendered in connection with this matter. During the hearing, the Court noted that "no contemporaneous time records" were provided by Furman, in support of his request for attorney's fees, and the Court inquired whether such records existed. Furman responded that he did not keep contemporaneous time records.

The Court inquired why the contingency fee originally agreed upon by Martegani and Furman—a fee of 30% of the total recovery—was reduced to 28%. Furman informed the Court that he had "volunteered" to reduce his contingency fee to 28% "because [he] want[ed] to charge [his] client what [he] believes is a reasonable fee for the services rendered," and he felt "there should have been a reduction." The Court also inquired about the $5,000 "reserve" that was created for additional expenses incurred after the original submissions were made to the Court. Furman responded that the only charge he believed would be made against the reserve would be for his travel expenses associated with attending the December 9, 2009 hearing.

During the hearing, the Court inquired about where the funds allocated to [redacted] would be deposited. In the submissions sent to the Court, before the hearing, Martegani proposed placing the minor child's settlement funds into "the registry of the Court to be deposited at interest and made available to said minor on reaching the age of majority." The Court asked whether other investment vehicles existed, that might better maximize the amount of funds that would ultimately be available to the minor child at majority, and whether Martegani had considered such options. Martegani and her attorney determined to explore other methods by which the minor child's funds could be held, and indicated that, thereafter, they would provide the Court a supplemental affidavit, detailing the means by which the minor's funds would be maintained.

In a supplemental affidavit, dated December 11, 2009, Martegani states that she considered different investment and other options to safeguard the settlement funds going to [redacted] Martegani reports she had been advised that: (1) a Uniform Gift to Minors Act ("UGMA") account, "would be a guardianship account with me, as mother of [[redacted]], guardian. The funds could not be accessed by my [minor child] directly until [the minor] reaches the age of 21. I would be permitted to draw on the account for the benefit of my [minor child] to pay for … necessities, including health, education, maintenance and support"; and (2) putting the funds into a trust "would have all of the advantages of a UGMA account and would have an added benefit of having a life that could extend past [[redacted]'s] 21st birthday." Moreover, Martegani could be named the trustee and would be able to invest the principal of the trust so as to "maximiz[e] the return" and "control[ ] the risk." Martegani states she was informed that UGMA does not have an "upfront cost"; however, a trust does have an "upfront cost to prepare and file the trust[,] of approximately $2,500.00." After considering these options, Martegani believes a trust would be in the best interest of her minor child, since "[i]t would have greater earning pow-

---

5. Some of the "descriptions" of the charges incurred are vague and the purposes for the charges are not clear. For example, several entries are for "Jim Furman," another is for the "U.S. Treasury," and others are for "Fed Ex."

er than a deposit through the Registry of the Court, and would incorporate the spend-thrift protection of extending the power of the trust beyond 21." As a result, she requests that [redacted]'s settlement funds be placed in an irrevocable trust, and that: (1) Martegani, as the minor's natural guardian, be named the trustee; (2) the trust provide "that income and principal may only be used for the benefit of [the minor child's] health, education, maintenance and support"; (3) the trust terminate when [redacted] attains the age of 35, at which time the trust's principal will be distributed to [redacted]; and (4) "[i]f appropriate, the Trust could be dissolved prior to [the minor child] attaining the age of 35, but not prior to [the minor child's] attaining the age of 21." In addition, Martegani has represented to the Court that she will pay the cost of creating the trust.

## DISCUSSION

■ In this judicial district, a proposed settlement involving a claim made by an infant must be reviewed by a judicial officer, who must determine whether: (1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable. *See* Local Civil R. 83.2(a); New York Judiciary Law ("NY Jud. Law") § 474; New York Civil Practice Law and Rules ("CPLR") §§ 1205–08. Specifically, a court must evaluate whether the proposed settlement is "fair and reasonable and in the infant plaintiff's best interests." *Edionwe v. Hussain,* 7 A.D.3d 751, 753, 777 N.Y.S.2d 520 (App.Div.2d Dep't 2004); *see also Doe v. Mattingly,* No. 06 CV 5761, 2007 WL 2362888, at *2 (E.D.N.Y. Aug. 14, 2007) (quoting *Neilson v. Colgate–Palmolive Co.,* 199 F.3d 642, 654 [2d Cir.1999] ) (a court

must determine whether a proposed settlement is " 'fair, reasonable and adequate,' by comparing 'the terms of the compromise with the likely rewards of litigation' "). In doing so, a court must " 'form an educated estimate of the complexity, expense, and likely duration of such litigation ... and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.' " *Newman v. Stein,* 464 F.2d 689, 692 (2d Cir.1972) (citation omitted), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972); *see also Allen v. Robert's American Gourmet Food, Inc.,* No. 07–CV–2661, 2009 WL 2951980, at *10 (E.D.N.Y. Sept. 8, 2009) (listing various factors a court should consider in assessing a proposal to compromise an infant's claim).

Prior to convening the infant compromise hearing, the Court received an affidavit by Martegani, in her individual capacity, and in her capacity as the "natural guardian" of [redacted], as well as an affidavit by the plaintiffs' attorney, in support of the proposed settlement's terms and conditions. *See* CPLR § 1208(a)-(c). At the infant compromise hearing, and in the supporting papers described above, the parties contemplated a Settlement Amount of $[redacted], to be distributed as follows: (1) $[redacted], in attorney's fees; (2) $6,447.69, in attorney disbursements; (3) $5,000, as a "reserve amount" for the plaintiffs attorney, for "future possible expenses"; (4) $[redacted] to [redacted], to be placed in a trust; and (5) the remainder, $[redacted], to Martegani.

*Attorney Compensation*

■ In considering the reasonableness of the requested attorney's fees to be deducted from the proposed settlement amount for an infant plaintiffs compromised claim, a court may consider the "skill, diligence, and expertise" required to

examine the issues raised in the action and the time and labor involved in litigating the case. *White v. DaimlerChrysler Corp.*, 57 A.D.3d 531, 535, 871 N.Y.S.2d 170, 174 (App.Div.2d Dep't 2008). The Court has done that here.

In addition, the United States Supreme Court has stated that "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). As noted above, during the infant compromise hearing, the Court inquired whether Furman kept contemporaneous time records reflecting the hours expended for the legal services rendered, that he could submit to the Court, in support of his request for fees. The Court was informed that Furman does not make and keep such records; thus, no records could be provided to the Court.

■ An attorney for a minor child must establish that a proposed settlement for the minor is fair and reasonable, and that includes, necessarily, any proposed attorney compensation. *See* CPLR § 1208(b); NY Jud. Law § 474. " '[T]he burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept the court should not award the full amount requested.' " *Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 83–84 (S.D.N.Y.1994) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1265 [2d Cir.1987] ). This is so even in a circumstance where, like here, the minor child's mother has agreed to the amount requested for legal fees and costs, since such an agreement, when made by guardians, is advisory only. It remains the fact that a court must determine and fix the amount of the attorney's fee. *See*

*Everett v. Bazilme*, No. CV 06–0269, 2007 WL 1876591, at *3 (E.D.NY. June 28, 2007).

■ In order to determine whether a proposed attorney fee is reasonable, a court should evaluate " 'what a reasonable paying client would be willing to pay' for the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked." *Moreno v. Empire City Subway Co.*, No. 05 Civ. 7768, 2008 WL 793605, at *2 (S.D.N.Y. Mar. 26, 2008) (citing *Torres v. City of New York*, No. 07 Civ. 3473, 2008 WL 419306, at *1 [S.D.N.Y. Feb. 14, 2008] ) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112 [2d Cir.2007] ). When records providing, at a minimum, detailed descriptions of the litigation-related tasks performed, the legal personnel involved, as well as the dates and hours worked are absent, the Court can neither assess the reasonableness of proposed attorney fees accurately, nor determine what a reasonable client might be willing to pay. *See Cruz v. Local Union No. 3 of Int'l Bhd. of Electrical Workers*, 34 F.3d 1148, 1160 (2d Cir.1994) (citing *DiFilippo v. Morizio*, 759 F.2d 231, 235 [2d Cir.1985] ).

■ While an attorney who represents a client on a contingency fee basis may not maintain contemporaneous time records, the absence of such records frustrates a court in its effort to evaluate the fairness and reasonableness of a proposed settlement, including legal fees, when an infant's claim is compromised. *See Monaghan, supra*. In such a circumstance, reducing the amount sought for attorney's fees is appropriate. *Id.* Counsel to the plaintiffs seeks 28% of the total recovery as his contingency fee; that results in a fee of $[redacted]. Since contemporaneous time records have not been supplied to the Court, no accu-

rate determination can be made by the Court, on the appropriateness of the amount of time expended by counsel on particular litigation tasks, and the Court is unable to evaluate properly whether the settlement proposed is reasonable and serves [redacted]'s best interests. Consequently, the Court finds that the proposed 28% contingency fee shall be reduced by 30%, and the plaintiffs' attorney shall receive $[redacted], as his fee.

*Recovery of "Case Expenses"*

As noted above, counsel to the plaintiffs submitted an affidavit to the Court which included a summary of the "case expenses" incurred by the plaintiffs in prosecuting this action. However, no invoices, receipts or other corroborating data, documenting the plaintiffs' costs, were provided.

■ The Court finds that the summary of costs submitted by Furman provides an insufficient basis upon which to rely in evaluating the reasonableness of the proposed disbursements. Local Civil Rule 54.1, of this court, which explains how requests to tax costs are typically handled, requires that "[t]he bill of costs shall include an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred. Bills for the claimed costs shall be attached as exhibits." Local Civ. R. 54.1(a). Where an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award any costs. *See Lide v. Abbott House,* No. 05 Civ. 3790, 2008 WL 495304, at *2 (S.D.N.Y. Feb. 25, 2008). Accordingly, granting the request for an order that costs for "case expenses" be recovered, in the circumstance of the case at bar, is inappropriate and, therefore, is denied.

In addition, to the extent a "reserve" fund of $5,000 has been created to pay for "future possible expenses," such as Fur-

man's travel expenses to attend the December 9, 2009 hearing, the Court notes that no documentation has been provided to substantiate those expenses; therefore, the Court declines to make an award covering Furman's December 2009 travel expenses. *See id.*

### CONCLUSION

Based on the record, as a whole, except as noted above, the Court finds that the terms and conditions under which the infant's claims will be compromised and settled, as proposed by the parties, is fair, reasonable and in the best interests of the minor child. In order to address deficiencies in the plaintiffs' submissions, respecting attorney's fees and costs, the Settlement Amount shall be reallocated as described above: (1) $[redacted], to James Furman, counsel to the plaintiffs, as suitable compensation for the legal services rendered to the plaintiffs; (2) $[redacted] to [redacted], 30% of the Settlement Amount, after the deduction of attorney's fees, which are to be placed in a trust, in accordance with the terms described above, and within Martegani's supplemental affidavit, dated December 11, 2009; (3) $[redacted], to Martegani, 70% of the Settlement Amount, after the deduction of attorney's fees, for the compromise and settlement of the claims asserted against Cirrus and East End in this action.

Therefore, IT IS HEREBY ORDERED that:

1) [redacted]'s parent and natural guardian, Martegani, is authorized and empowered, in the interest of her infant child, [redacted], born on [redacted], to settle and compromise [redacted]'s claims, as described and set forth in this litigation, and to waive the claim that she, Martegani, brought as an individual, for a lump sum case settlement

payment, a portion of which is to be held in trust, for the credit and benefit of [redacted], at an aggregate cost to the defendants, in the sum of [redacted], with Cirrus Design Corporation paying [redacted] and East End Aviation, LLC, paying [redacted], in full satisfaction of all claims for damages, attorney's fees and interest;

2) the sum of [redacted], is to be deducted from the Settlement Amount and paid by the defendants, to James Furman, as reimbursement for attorney's fees, in consideration of the discussion above regarding the absence, from the record, of any contemporaneous time records or corroborating evidence for expenses, respecting the legal services rendered to the plaintiffs. This amount is to be paid by the defendants, as follows: East End shall pay, via a check, [redacted], and Cirrus shall pay, via a check, [redacted];

3) the sum of [redacted] is to be paid by the defendants to MICAELA MARTEGANI, AS TRUSTEE FOR THE INFANT, [redacted], to the credit and benefit of [redacted], via a check, made payable to MICAELA MARTEGANI, AS TRUSTEE FOR THE INFANT, [redacted], and subject to the further order of the Court, shall be deposited into a trust, that will provide that income and principal flowing therefrom may only be used for the benefit of [redacted], for the minor child's health, education, maintenance, and support. The cost of creating this trust shall be borne and paid by Martegani. This amount is to be paid by the defendants as follows: East End shall pay, via a check, [redacted], and Cirrus shall pay, via a check, [redacted];

4) the sum of [redacted] is to be paid by the defendants to Martegani, via a check, to compensate her for the wrongful death of her husband. This amount is to be paid by the defendants as follows: East End shall pay, via a check, [redacted], and Cirrus shall pay, via a check, [redacted] );

5) upon making all the payments directed above, in compliance with this order, the defendants shall then be discharged from any and all responsibility as to the claims set forth in this action;

6) upon presentment of proper proof of age to the depository of the trust, that [redacted] has reached the age of thirty-five (35) years, the said depository shall, upon demand, pay all the money in the trust account to [redacted];

7) except as noted above, there shall be no partial withdrawals of any of the deposited funds by MICAELA MARTEGANI, AS TRUSTEE FOR THE INFANT, [redacted], prior to [redacted] attaining the age of thirty-five (35) years, without a further order from the Court; and

8) the Court retains jurisdiction of this action for: (a) enforcing this infant compromise order, (b) enforcing the terms of the underlying settlement agreement, and (c) for entering this infant compromise order. The Clerk of the Court is directed to close this case.

\*       \*       \*

N.B. This Memorandum and Order will be filed under seal with the Clerk of Court and a redacted version will be filed electronically.

SO ORDERED.