v.

**NEW YORK CITY DEPARTMENT OF EDUCATION, et al., Defendants.**

No. 13–CV–8777 (JLC).

United States District Court, S.D. New York.

Signed Jan. 14, 2015.

Christopher D. Lamb, Legal Services NYC—Bronx, New York, NY, Nancy Bedard, South Brooklyn Legal Services, Brooklyn, NY, Nanette Schorr, Bronx Legal Services, Nelson Mar, Legal Services for New York City, Bronx, NY, Tara Foster, Queens Legal Services Corp., Long Island City, NY, for Plaintiffs.

Elizabeth Edmonds, NYC Law Department, Marilyn Richter, Corp. Counsel of the City of NY, Omar Hani Tuffaha, New York City Law Department, Serena Mabel Longley, NYC Law Department, New York, NY, for Defendants.

### MEMORANDUM ORDER

JAMES L. COTT, United States Magistrate Judge.

Plaintiffs T.H., K.P., K.J., C.J., Y.P., M.E., T.W., A.D., N.C.R., I.S., and R.M.T. commenced this action on December 11, 2013 on their own behalf and on behalf of their minor children J.H., W.P., J.R., J.M., N.R., D.E., A.A., S.D., C.R., Q.A., and R.T. (the "Infants"), respectively, for injunctive and declaratory relief and damages against the City of New York, its Department of Education and its Fire Department.[1] Plaintiffs, who are the parents of 11 New York City public school children, alleged in their amended complaint that their children have been subjected to and damaged by an unlawful practice and policy of using Emergency Medical Services to remove children with disruptive behavior from schools when school personnel have no reasonable belief that the children are in need of emergency medical care. Defendants denied the allegations, and the parties vigorously litigated the case until they decided to make efforts to resolve their dispute. To that end, beginning on June 30, 2014, the Court held five settlement conferences with the parties, culminating with a settlement in principle on November 6, 2014. The parties then submitted a Stipulation and Order of Settlement ("Stipulation") to the Court for approval on December 15, 2014, which the Court has since "so ordered."[2] See Stipulation (Dkt. No. 71). As part of their settlement, the parties agreed to resolve Plaintiffs' claims for damages, subject to the Court's approval of Plaintiffs' infant compromise applications. Id., at 16.

Plaintiffs have now submitted 11 applications to the Court pursuant to Local Rule 83.2 for an order approving the settlement of each of the Infants' damages claims in this action. Dkt. Nos. 79, 82, 85, 88, 91, 94, 97, 100, 103, 106, and 110. For the reasons set forth below, I find that the proposed settlements are fair, reasonable, and in the best interests of the Infants, and therefore grant the motions and approve the settlements.

A. *Standards Applicable to an Infant Compromise*

In determining whether an infant compromise should be approved, "the Court's role is to 'exercise the most jealous care that no injustice be done' to the in-

---

1. Although known to Defendants, Plaintiffs are named in this case using only their initials in order to preserve the privacy guaranteed the plaintiff children by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* as well as by the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. pt. 99. Amended Complaint, ¶ 9 (Dkt. No. 19).

2. The parties have consented to my exercising plenary jurisdiction over the matter pursuant to 28 U.S.C. § 636(c). Dkt. Nos. 69, 70.

fant." *Southerland v. City of New York,* No. CV–99–3329 (CPS), 2006 WL 2224432, at *2 (E.D.N.Y. Aug. 2, 2006) (quoting *Anderson v. SAM Airlines,* No. 94–CV–1935, 1997 WL 1179955 (E.D.N.Y. Apr. 25, 1997)). In this District, Local Rule 83.2(a)(1) requires that

> [a]n action by or on behalf of an infant or incompetent shall not be settled or compromised ... without leave of the Court embodied in an order, judgment or decree. The proceeding upon an application to settle or compromise such an action shall conform, as nearly as may be, to the New York State statutes and rules, but the Court, for cause shown, may dispense with any New York State requirement.

As Magistrate Judge Pitman recently observed in a comprehensive discussion of the applicable standards in this context, "[c]onsistent with the applicable New York State statutes and rules, the analysis in this jurisdiction centers on 'whether: (1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable.'" *Orlander v. McKnight,* No. 12–CV–4745 (HBP), 2013 WL 4400537, at *3 (Aug. 15, 2013) (quoting *Martegani v. Cirrus Design Corp.,* 687 F.Supp.2d 373, 377 (S.D.N.Y.2010) (citing Local Civ. R. 83.2(a); N.Y. Jud. L. § 474; N.Y. C.P.L.R. §§ 1205–08)); *see also Edionwe v. Hussain,* 7 A.D.3d 751, 753, 777 N.Y.S.2d 520, 522 (2d Dep't 2004) (required analysis is whether settlement is "fair and reasonable and in the infant plaintiff's best interests"). "There is no bright-line test for concluding that a particular settlement is fair." *Sch. for Language & Commc'n Dev. v. New York State Dep't of Educ.,* No. 02–CV–0269 (JS)(JO), 2010 WL 1740416, at *2 (E.D.N.Y. Apr. 7, 2010) (Report & Recommendation),

*adopted* at 2010 WL 1752183 (E.D.N.Y. Apr. 28, 2010) (*citing Newman v. Stein,* 464 F.2d 689, 692–93 (2d Cir.1972)). Moreover, the Second Circuit has noted that "Rule 83.2 is hardly a rigid obligation imposed on district courts." *Neilson v. Colgate–Palmolive Co.,* 199 F.3d 642, 655 (2d Cir.1999). Put another way, "[d]istrict courts have broad discretion when conducting an infant compromise hearing." *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 89 (2d Cir.2010).

█ Despite this broad discretion, a court cannot approve a proposed infant compromise unless it is "fair, reasonable, and adequate," based on a comparison of "the terms of the compromise with the likely rewards of litigation." *Neilson,* 199 F.3d at 654 (quoting *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir.1995)) (internal quotation marks omitted). In making this determination, the court should " 'form an educated estimate of the complexity, expense, and likely duration of such litigation ... and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.' " *Martegani,* 687 F.Supp.2d at 377 (alteration in original) (quoting *Newman,* 464 F.2d at 692). These other factors include: the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Allstate Ins. Co. v. Williams,* No. 04–CV–4575 (CLP), 2006 WL 2711538, at *2 (E.D.N.Y. Sept. 21, 2006) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974), *abrogated on other*

*grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir.2000)).

 A settlement is presumptively fair and reasonable if " '(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently....' " *Baez v. City of New York,* No. 09–CV–2635 (RRM)(JO), 2010 WL 1992537, at *2 (E.D.N.Y. Apr. 21, 2010) (Report & Recommendation) (alterations in original), *adopted* at 2010 WL 1991521 (E.D.N.Y. May 17, 2010) (quoting *Ross v. A.H. Robins Co.,* 700 F.Supp. 682, 683 (S.D.N.Y.1988)). Additionally, it is a well-settled proposition that a settlement negotiated by the natural guardian of an infant is presumptively fair and in the best interests of the child. *See, e.g., Sch. for Language & Commc'n Dev.,* 2010 WL 1740416, at *3 (citing *Sabater v. Lead Indus. Ass'n, Inc.,* No. 00–CV–8026 (LMM), 2001 WL 1111505, at *3–4 (S.D.N.Y. Sept. 21, 2001) *and Stahl v. Rhee,* 220 A.D.2d 39, 46, 643 N.Y.S.2d 148, 153 (2d Dep't 1996)).

B. *The Settlements Here Are Fair and Reasonable and in the Best Interests of the Infants*

██ Applying these standards, I conclude that the infant compromises proposed by Plaintiffs are fair, reasonable, and in the best interests of the Infants.

First, there is no evidence of collusion in this case. Rather, having presided over five settlement conferences with the parties and having reviewed the Plaintiffs' submissions, which include declarations of all of the parent Plaintiffs and their attorneys in support of their motions, I am confident that the parties agreed to this compromise only after dealing extensively and exclusively at arm's length with each other.

Second, Plaintiffs' counsel are experienced in cases such as this one and have acted in their clients' best interests in negotiating this settlement.

Third, I am satisfied that sufficient litigation has occurred to allow for an educated analysis of the issues involved and the proposed compromises. The parties were engaged in discovery at the time settlement discussions began. In addition, Defendants had moved to dismiss the amended complaint on the ground that Plaintiffs had failed to exhaust their available administrative remedies pursuant to the IDEA, as required before bringing a claim in federal court. On June 30, 2014, I presided over the initial settlement conference during which the parent Plaintiffs attended, and at which their damage claims were fully discussed.[3] I am satisfied on the basis of that conference that the parties had a sufficient understanding of the facts to enable an intelligent evaluation of the risks and benefits of further litigation.

Finally, there is nothing in the record to rebut the presumption that the settlements that the parent Plaintiffs have agreed to are fair and in the best interests of the Infants.

Under the proposed settlements, each of the Infants and their parents will receive the following:

- The damages settlement for T.H. and J.H. totals $111,908.20. Of this total, $100,000 is compensation for J.H.'s

---

**3.** Given that the parent Plaintiffs and their attorneys appeared in court and participated fully in the settlement conference, the Court will dispense with a hearing at this time, which would otherwise be required under New York State law, pursuant to Local Rule 83.2(a)(1) ("[T]he Court, for cause shown, may dispense with any New York State requirement.").

emotional damages related to the removals of J.H. from his school, $10,000 is compensation for T.H.'s emotional damages related to these removals, and $1,908.20 is compensation for T.H.'s out of pocket costs and lost wages related to the removals. A portion of J.H.'s settlement, $56,000, is being placed in a dedicated interest-bearing account for his future benefit. The balance of J.H.'s emotional damages settlement, $44,000, will be used to pay for his family's more immediate needs, including the need to secure more stable housing in Vermont, where he now resides, and a vehicle in order to facilitate J.H.'s enrollment in various after-school activities. Dkt. No. 80.

- The damages settlement for T.W. and A.A. totals $25,288. Of this total, $23,000 is compensation for A.A.'s emotional distress related to the removals from his school, $2,000 is compensation for T.W.'s emotional distress related to these removals, and $288 is compensation for T.W.'s out of pocket costs related to the removals. A.A.'s compensation will be placed in a Trust such as a Special Needs Trust for his benefit. Dkt. No. 83.

- The damages settlement for M.E. and D.E. totals $80,176.75. Of this total, $78,176.75 is compensation for D.E.'s emotional distress related to the removals from his school, $1,824 is compensation for M.E.'s emotional distress related to these removals, and $176.75 is compensation for M.E.'s out of pocket costs related to the removals. D.E.'s compensation will be placed in a Trust such as a Special Needs Trust for his benefit. Dkt. No. 86.

- The damages settlement for N.C.R. and C.R. totals $20,040. Of this total, $20,000 is compensation for C.R.'s emotional distress related to the attempted removals from his school, and $40 is compensation for N.C.R.'s out of pocket costs related to the attempted removals. $10,000 of C.R.'s compensation will be placed in a Trust such as a Special Needs Trust for his benefit, while the balance of the compensation will be used for his family's immediate needs, including the purchase of a vehicle. Dkt. No. 89.

- The damages settlement for K.J. and J.R. totals $61,488.25. Of this total, $52,500 is compensation for J.R.'s emotional distress related to the removals from his school, $5,000 is compensation for K.J.'s emotional distress related to these removals, and $3,988.25 is compensation for K.J.'s out of pocket costs and lost wages related to the removals. $30,500 of J.R.'s compensation will be placed in a Trust such as a Special Needs Trust for his benefit, while the balance of the compensation will be used for his family's immediate needs. Dkt. No. 93.

- The damages settlement for Y.P. and N.R. totals $33,047.50. Of this total, $20,000 is compensation for N.R.'s emotional distress related to calls for EMS, threatened removal and removal from his school, $10,000 is compensation for Y.P.'s emotional distress related to these removals, and $3,047.50 is compensation for Y.P.'s out of pocket costs and wage loss related to the removals. N.R.'s compensation will be placed in a Trust such as a Special Needs Trust for his benefit. Dkt. No. 95.

- The damages settlement for R.M.T. and R.T. totals $50,788.50. Of this total, $40,000 is compensation for R.T.'s emotional distress related to the removals from his school, $10,000 is compensation for R.M.T.'s emotional dis-

tress related to these removals, and $788.50 is compensation for R.M.T.'s out of pocket costs and lost wages related to the removals. R.T.'s compensation will be placed in a Trust such as a Special Needs Trust for his benefit. Dkt. No. 98.

- The damages settlement for A.D. and S.D. totals $25,074.50. Of this total, $20,000 is compensation for S.D.'s emotional distress related to the removals from his school, $5,000 is compensation for A.D.'s emotional distress related to these removals, and $74.50 is compensation for A.D.'s out of pocket costs related to the removals. S.D.'s compensation will be placed in a Trust such as a Special Needs Trust for his benefit. Dkt. No. 101.

- The damages settlement for I.S. and Q.A. totals $20,110. Of this total, $20,000 is compensation for Q.A.'s emotional distress related to the removal from his school, and $110 is compensation for I.S.'s out of pocket costs and lost wages related to the removal. Q.A.'s compensation will be used, in part, to pay for travel abroad where Q.A. will reunite with his father, as well as for certain after-school activities and future educational and vocational training. Dkt. No. 104.

- The damages settlement for C.J. and J.M. totals $37,500. Of this total, $30,000 is compensation for J.M.'s emotional distress related to the removal from his school, and $7,500 is compensation for C.J.'s emotional distress related to this removal. J.M.'s compensation will be placed in a Trust

such as a Special Needs Trust for his benefit. Dkt. No. 107.

- The damages settlement for K.P. and W.P. totals $37,200. Of this total, $35,000 is compensation for W.P.'s emotional distress related to the removals from his school, and $2,200 is compensation for K.P.'s out of pocket costs related to the removals. W.P.'s compensation will be placed in a Trust such as a Special Needs Trust for his benefit. Dkt. No. 112.

The Court concludes that these settlement amounts are fair, reasonable, and adequate. As a threshold matter, upon the parties' reaching an impasse during the course of settlement discussions, the Court proposed a formula to calculate damages, to which the parties agreed. These settlements are thus informed, at least in significant part, by the Court's own sense of their value. Moreover, given the pendency of Defendants' motion to dismiss, and the fact that the outcome of litigation can never be predicted with certainty, the results here are reasonable under the circumstances. I note further that if this case had proceeded to trial, there would have been the potential for trauma (or, at a minimum extreme discomfort) on the Infants in recounting their removals from school. All other things being equal, it is in the Infants' interests to avoid a trial given the reasonableness of these settlements.[4]

### C. Conclusion

Based on all of the circumstances of this case, I conclude that the proposed settlements to resolve Plaintiffs' damages claims are fair, reasonable, and in the best inter-

---

4. The Court notes that the Stipulation and Order of Settlement explicitly leaves open Plaintiffs' claims for reasonable attorneys' fees and costs. Dkt. No. 71, at 16. By the terms of the Stipulation, Plaintiffs are to make a demand within 45 days of entry of the Stipulation and the parties are then to make good-faith efforts to reach an agreement as to the amount of fees and costs. *Id.*

ests of the Infants. Plaintiffs' motions are therefore granted and the settlements of the Infants' claims are approved.

The Clerk is hereby directed to close the motions at Docket Nos. 79, 82, 85, 88, 91, 94, 97, 100, 103, 106, and 110.

**SO ORDERED.**